# CHARLESTON

TRANSPORTATION CO. v. ASSURANCE CO.

Submitted September 11, 1906.    Decided February 19, 1907.

1. INSURANCE—*Marine Insurance—Stranding of Vessel.*

A policy of marine insurance, containing the clause "that no claim will be made for loss, damage or expense resulting from stranding or grounding, unless caused by stress of weather." Wind causing stranding of the steamboat insured comes under the term "stress of weather," though such wind is not a tornado or extraordinary, and though not unusual in the section where the stranding occurs. (p. 325.)

Error to Circuit Court, Wayne County.

Action by the Huntington, Ashland & Big Sandy Transportation Company against the Western Assurance Company of Toronto. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

HARTWELL CABELL, J. L. KOHL, and J. M. TIERNAN, for plaintiff in error.

SIMMS & ENSLOW, for defendant in error.

BRANNON, JUDGE:

The Western Assurance Company issued a policy of marine insurance in favor of J. F. York insuring the steamer

"Miles H." It was assigned to the Huntington, Ashland and Big Sandy Transportation Company. While the steamer was navigating Tug Fork of the Big Sandy river it was stranded on a rocky bar, and in an action on the policy the Transportation Company recovered verdict and judgment, and the Assurance Company brought this writ of error.

The assurance company assigns error in the refusal of the court to strike out the evidence of the plaintiff and to direct a verdict for the defendant. After this motion the defendant introduced evidence in defence, and this waived the motion to strike out the evidence.

As to the motion to direct a verdict. One ground assigned for this is, that the policy provides "that no claim will be made for loss, damage or expense resulting from stranding or grounding, unless caused by stress of weather," and it is particularly insisted that the stranding of the steamer was not caused by stress of weather. Whether stress of weather was the cause was a question of fact for the jury and we could not set aside the verdict, unless we could say it was in this respect plainly without evidence. The river was high, and the wind was high in March. The steamer had a barge attached, and a rope connecting the barge with the steamer broke, the barge swung around and, as the defence claimed, caused the steamer to strand. Evidence was given that the combined effect of high water and wind caused the boat to strand. Can we say how much each contributed? Can we say that wind was not the proximate cause? But there was evidence that the wind is frequently heavy in the bend of the river where the accident occurred, and that on that day it was high, and came in gusts, and that the accident was attributable to the wind. A witness said, "There was no harder wind that I ever saw blowing there." Under these circumstances how can we say the wind was not the greater cause? I repeat the cause of the stranding was a jury question. Surely the evidence just indicated would prevent the court from taking the case from the jury. Counsel rely on the theory that "stress of weather" has a technical or peculiar meaning, and that as high wind was to be expected in March, the wind proven to have been blowing does not answer the term "stress of weather." We are cited *Railway Co.* v.

*Heath*, 22 Ind. App. 47, holding that freezing weather is not stress of weather as it was usual in the section. That does not mean stress of weather. We do not think it parallel. We think there is no peculiar meaning in the term. Does not high, strong wind come under the term? Does not the policy mean to insure against a high, gusty wind that does cause stranding? If that be the cause is not the demand of the policy met? Webster says that "stress" means pressure, strain; that stress of weather means constraint imposed by continued bad weather, as to be driven back to port by *stress* of weather. "It is a stranding where the ship is forced by the *wind* into a mud bank." "Or where having her head she is forced by the wind to so change her position that at the ebbing of the tide she is stranded and springs a leak." 3 Joyce on Insurance, section 2817. In addition to oral evidence the fact stands out beyond question that the wind was blowing from the West Virginia side of the river to the Kentucky side, and that the steamer stranded on the Kentucky side. What caused it? Why not say it was the strain, pressure, force of the wind? The evidence shows that it was the wind that broke the rope and caused the accident. Was not this the thing intended to be insured against? If the wind was strong enough to produce the result, as the jury found, why was it not that kind of weather contemplated by the term?

Another ground assigned for direction of a verdict for the defence is, that conditions of the policy were not complied with, one being proof of loss within thirty days. Proof was not made within that time, which the policy makes a condition precedent to recovery. The plaintiff, as an answer to this, sets up a waiver by the company. The evidence goes to show that within thirty days an adjuster was sent by the assurance company to examine into the loss. The assurance company, on being informed of the loss, instructed the owner of the steamer to "take care of the vessel." Later, after considerable delay imputable to the assurance company, came the adjuster, and in interview with York, asked York for the expense bill for floating the steamer into the stream again, and was shown it. He then asked what would be the damage to the steamer, and was informed that it would be from $700 to $1,000, when he said he was glad

it was no worse, and told York to send to the company bill
of expense for floating and damages to the vessel and it
should be paid.   The adjuster did not, though requested, go
to see the boat.   He did not mention the policy or its con-
ditions, or demand compliance with them.   He simply and
plainly acknowledged liability and promised payment, ac-
cording to the plaintiff's evidence.   Take the interview, its
character, all that was said and done, and such is the effect.
" Everything said and done by the insurer or his proper agent,
upon which the insured may reasonably rely, which might
fairly induce him to conclude that such proofs of loss have in
his case been dispensed with or excused, and he is thereby
influenced to act in good faith in accordance with such con-
duct, may amount to a waiver of such formal stipulation."
*Peninsular Co.* v. *Franklin Ins. Co.*, 35 W. Va. 667, pt. 10.
It is said that the court should not have submitted this evi-
dence of waiver of non compliance with the condition of
proof of loss.   Surely it was proper to go to the jury.   It
is settled law that proof of loss is waived by a promise to
pay, or admission of liability.   *Rheims* v. *Standard Co.*, 39
W. Va. 672.  But it is said that the loss not being chargeable
to stress of weather, this evidence of waiver is immaterial;
but we have said that the case is, under the evidence, one of
stress of weather.   It is said that the adjuster was misled to
so promise by the representation that the boat was lost
by "stress of weather," when it was not; but we have seen
that this was no misrepresentation.   So the jury found, else
it could not have found the verdict which it did find.  Again in
*Muhlman* v. *Ins. Co.*, 6 W. Va. 508, it is said that a waiver
must be supported by an agreement founded on a valuable
consideration, or the act relied on must be such as to estop
a party from insisting on performance of the contract or for-
feiture of the condition.   How can it be said that there was
no agreement under the evidence?   And how can it be thus
suggested that there was no consideration, when the owner
of the boat was demanding compensation for loss sustained,
and the debtor acknowledged liability and promised payment?
And as to estoppel.   After such promise of payment, opera-
ting to dispense with proof of loss, it would be unjust to allow
the assurance company, after thirty days, to retract its prom-
ise and insist upon proof of loss, its action having caused

delay in making proof until after the thirty days ·had gone. 1 Joyce on Insurance, section 592; *Georgia Co.* v. *Kinner*, 28 Grat. 88. Indeed, the proof of loss was wholly dispensed with by the waiver or compromise. After thirty days the assurance company asked proof; but the waiver or compromise had had its effect, and the boat owner was under no obligation then to prove loss, but might rely on the compromise or acknowledgment of liability. And to then give proof of loss would likely waive right to rely on the promise of payment. These principles apply to and dispense with the obligations of the policy to have a survey of the steamer after the accident, and a bond of apportionment.

After the promise of payment the assurance company wrote a letter to one acting as attorney for the plaintiff saying that the conditions and stipulations of the policy had not been complied with; declaring that the stranding was not from stress of weather, but from a chain or rope breaking and letting a barge which the boat was towing contrary to privilege, swing around and pull the steamer on a bar; that the boat was safe and free from harm on the bar; that no survey had been made. This letter is a clear denial of liability, except only that it closed with the statement that if papers were properly gotten up touching the loss, they would be submitted to the general agent. Taken as a whole it was a practical denial of liability. This will dispense with proof of loss. *Medly* v. *Ins. Co.*, 55 W. Va. 344, pt. 11. This denial was not within the thirty days. It denied liability on other grounds than want of proof of loss and survey, and would thus dispense with such proof. And as to failure to comply with its request for proper papers touching the loss, would dispense with that. And if such papers were then furnished, it would be, or might be, a waiver of the former promise of payment.

The evidence is clear to prove said compromise, if credible. That agreement closed all questions of conditions. They were waived. There was, by the plaintiff's evidence, an absolute promise of payment. The evidence of the adjuster denied such compromise. The jury believed the plaintiff's two witnesses. Can we overthrow a verdict founded on conflicting oral evidence? In fact the case rests on oral evidence and that as to the compromise highly conflicting. It was a jury case.

Instruction 3, refused, is not insisted on in the brief. It was given with a modification appearing proper.

The court was asked to give an instruction, 7, saying that if "you find from a fair preponderance of the evidence that the defendant has not waived such survey and sworn statements, and that they have not been furnished by the plaintiff, you must find for the defendant." The court struck out the words "a fair preponderance of the." We do not see that the change altered the instruction materially, or made it erroneous.

Objection is made that the verdict, $1586.26, was excessive, because the policy provided that the insurer should be liable for loss only in proportion as the sum insured, $3500, bore to the value of the boat, $5000. There was evidence that the damage was $1,500, whereas the claim for it was $1,000. The expense of floating $586.26. But aside from this, the demand of the owner was $586.26 expense and $1,000 damage, and there was an absolute promise to pay that sum. If the assessment of damage were on the actual loss, regardless of the compromise or agreement, this question might be material. As stated above we do not see but that this case depends on questions of fact for the decision of a jury.

Therefore, we can do nothing but affirm the judgment.

*Affirmed.*